UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FEDERAL INSURANCE COMPANY, *AS SUBROGEE OF LANCASTER GENERAL HEALTH AND LANCASTER GENERAL HOSPITAL*, | : : : : : |
| Plaintiff, | : : |
| v. | : No. 5:17-cv-01419 : |
| BRINJAC ENGINEERING, INC; DYNATECH CONTROLS, INC., | : : : |
| Defendants. | : |

# **O P I N I O N**

**Brinjac Engineering, Inc.'s Motion to Dismiss, ECF No. 10 – Granted in part**

**Joseph F. Leeson, Jr.**                                                                                                     **March 6, 2018**
**United States District Judge**

## I.    Introduction

This case arises out of a July 13, 2016 failure in an electrical connection between Lancaster General Hospital's electronic building management network and the hardware that operated the Hospital's HVAC system. As a result of this failure, several of the Hospital's air handling units drew warm air into the Hospital's HVAC systems, damaging sterile equipment, supplies, devices, and materials, and resulting in the shutdown of numerous operating rooms. Plaintiff Federal Insurance Company, as subrogee of the Hospital, alleges that this failure resulted from the acts and omissions of Defendants Brinjac Engineering, Inc., and Dynatech Controls, Inc. According to the Complaint, Brinjac "was hired by the Hospital in 2006 to provide professional engineering, design, review of existing conditions, shop drawings, technical

specifications and construction site visits and observations with respect to a series of air handling units that the Hospital desired to replace in the third floor mechanical room." Compl. ¶ 8. As for Dynatech, it was "retained by the Hospital to integrate the new air handling units . . . into the existing building Management and BAS IT network systems at the Hospital and to make revisions, upgrades, recommendations, programming changes, sequencing analysis and evaluation of those systems." Compl. ¶ 9. Further, Dynatech is alleged to have installed a "GigaFast brand network Ethernet switch . . . into the Hospital Building Management and BAS IT network system." Compl. ¶ 13. This switch was "critical to the control of communications between the electronic building Management and BAS IT network and the hardware that operated the Hospital HVAC system." *Id.* On July 13, 2016, the GigaFast switch failed, causing "various network managers for the air handling units to 'sense' a lack of chilled water," which caused "the air handling units to default into economizer mode," which in turn caused warm air to be drawn into the HVAC systems, resulting in damage being sustained by the Hospital on that date. Compl. ¶¶ 14-16.

Federal Insurance alleges that as a result of the events of July 13, 2016, the Hospital has asserted claims against a Federal Insurance property insurance policy, and that Federal Insurance has made "advance payments under its insurance policy totaling $1,500,000 to the Hospital and additional claims are pending." Compl. ¶¶ 21-22. Further, Federal Insurance alleges that it is "legally, equitably and contractually subrogated to the rights of the Hospital against any and all third parties." Compl. ¶ 23. Federal Insurance asserts claims against both Brinjac and Dynatech sounding in negligence, breach of contract, and various other theories of liability.

Brinjac has moved to dismiss Federal Insurance's claims, contending that Federal Insurance lacks standing in this matter because the Hospital has not yet been "made whole" for

2
030618

its losses. In the alternative, Brinjac moves to dismiss Federal Insurance's claims for failure to state a claim, contending that Federal Insurance has failed to link Brinjac's conduct to the events of July 13, 2016. For the following reasons, Brinjac's motion is granted in part.

## II.    Standard of Review

### A.    Motion to Dismiss for Lack of Standing

Article III of the United States Constitution limits the power of the federal judiciary to "cases" and "controversies." U.S. Const. art. III. "To establish Article III standing, a plaintiff must demonstrate '(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision.'" *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016) (quoting *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 358–59 (3d Cir. 2015)). "The burden to establish standing rests with the plaintiffs." *Id.* at 194. "[T]o survive a motion to dismiss for lack of standing, a plaintiff 'must allege facts that affirmatively and plausibly suggest that it has standing to sue.'" *Id.* at 195 (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)).

### B.    Motion to Dismiss for Failure to State a Claim

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). However, "the tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

**III.    Analysis**

**A.    The "made whole" doctrine does not preclude Federal Insurance from establishing standing in this matter.**

As mentioned above, to establish Article III standing, a plaintiff must demonstrate (1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision. Brinjac has not identified which, if any, of these elements it believes is lacking in the present case. Rather, Brinjac asserts that Federal Insurance lacks standing in this case in light of Pennsylvania's "made whole" doctrine, which, Brinjac contends, requires that an insured must recover the full amount of its losses before its insurer may exercise its rights to subrogation. Pursuant to this doctrine, Brinjac contends that "in so far as [Federal Insurance] admits that its insured has additional claims pending against it, [Federal Insurance] lacks standing to bring its claims in subrogation against Brinjac." Brinjac's Br. Supp. Mot. 3, ECF No. 10-1. Federal Insurance responds that the made whole doctrine applies where the actions of the insurer may impair the insured's right of recovery, but that these circumstances are not present in this case.

As a general principle, the "made whole" doctrine provides that "where an insured is entitled to receive recovery for the same loss from more than one source, e.g. the insurer and the tortfeasor, it is only after the insured has been fully compensated for all the loss that the insurer

acquires a right to subrogation, or is entitled to enforce its subrogation rights." *Jones v. Nationwide Prop. & Cas. Ins. Co.*, 32 A.3d 1261, 1271 (Pa. 2011) (quoting 16 *Couch on Insurance* § 223:134 (3d ed.)). The doctrine "both ensures that the insured is fully compensated [i.e., "made whole"] for his or her injury before the insurer recovers, in cases where there are insufficient funds to satisfy both the insured and the insurer, and prevents the insured from receiving dual recovery for the same loss from both the tortfeasor and the insurer." *Id.*

In applying the made whole doctrine, however, "one must keep subrogation claims against insureds separate from subrogation claims against third-party tortfeasors." *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1120 (9th Cir. 2010). First, in the context of subrogation claims against insureds—a situation that is not present here—the doctrine requires that "the insured must recover the full amount of his losses from a third-party before the insurer may claim any reimbursement from the insured." *See Harnick v. State Farm Mut. Auto. Ins. Co.*, No. CIV.A. 08-5752, 2009 WL 579378, at *3 n.1 (E.D. Pa. Mar. 5, 2009). Second, in the context of subrogation claims against third-party tortfeasors, the doctrine applies where, as quoted above in *Jones*, "there are insufficient funds to satisfy both the insured and the insurer." *See Jones*, 32 A.3d at 1271. But the doctrine "does not apply as a bar to subrogation [claims against third-party tortfeasors] where funds are sufficient to make both the insured and the insurer whole." *Unitrin Auto & Home Ins. Co. v. Clayton Corp. of Delaware,* No. 1:15-CV-02079, 2016 WL 8199315, at *5 (M.D. Pa. Apr. 20, 2016); s*ee Chandler*, 598 F.3d at 1116 ("[A] carrier may pursue reimbursement and has no obligation to make the policyholder 'whole' out of reimbursement proceeds unless and until the policyholder attempts and fails to recover from the tortfeasor."); *Restatement (Third) of Restitution and Unjust Enrichment* § 57 cmt. h (Am. Law Inst. 2011) ("There is no reason to deny subrogation if the allowance of [an insurer's] claim via subrogation

does not in fact hinder or jeopardize the satisfaction of [the insured's] remaining claim against [the tortfeasor].").

Here, the Complaint does not allege, nor is there evidence in the record to suggest, that there are insufficient funds to satisfy both the insurer and insured in this case, or that Federal Insurance's claim will otherwise deprive the Hospital of full recovery on its loss. Accordingly, the made whole doctrine does not bar Federal Insurance's claims, and to this extent Brinjac's Motion is denied.[1]

**B.  Federal Insurance has failed to state a claim on which relief may be granted.**

In the alternative to its argument concerning standing, Brinjac contends that Federal Insurance fails to state a claim against it. According to Brinjac, "[a]t best, [Federal Insurance] alleges that Brinjac installed the air handlers, under a 2006 contract, and in the ten years that followed Dynatech integrated the handling units installed by Brinjac to the existing building management and BAS IT network systems that were maintained by Dynatec." Brinjac's Br. Supp. Mot. 6. Brinjac contends that these allegations fail to link Brinjac's 2006 actions to Dynatech's subsequent and ongoing actions in the ten years that followed and, ultimately, to the events of July 13, 2016.

---

[1]  Moreover it is questionable whether a third-party tortfeasor, as opposed to the insured, even has standing to invoke the made whole doctrine against an insurer. *See Am. Auto. Ins. Co. v. Quality Plastering & Stucco, Inc.*, No. 611CV1767ORL22DAB, 2013 WL 12149411, at *4 (M.D. Fla. June 26, 2013) ("There is . . . persuasive case law suggesting that the only two parties with standing to raise a 'made whole' argument are the insurer or the insured."). As one court has explained, the made whole doctrine is intended to protect the rights of the insured, and "[a]llowing the 'made whole' doctrine to be used by the tortfeasor as a defense would provide an advantage to the tortfeasor not intended by the application of the doctrine." *Id.* Notably, Brinjac has not cited any cases in which an alleged tortfeasor has successfully invoked the made whole doctrine against an insurer. Rather, the cases cited by Brinjac involve disputes between an insurer and an insured.

Federal Insurance responds that it "is not asserting that the air handling units had any type of mechanical failure or defect. Instead, it was the programming and sequencing designed by Brinjac and later implemented by Dynatech which led to the July 13, 2016 losses sustained by the Hospital." Pl.'s Br. Opp'n 15, ECF No. 12-1. In short, Federal Insurance contends that its Complaint alleges that Brinjac "failed to properly design and specify the operating system for the air handling units and failed to ensure that the air handling units and the network systems for the hospital building management computers were properly connected and programmed." *Id.* at 16. In particular, Federal Insurance points to paragraphs 10 and 11 of the Complaint, which read as follows:

> 10. Prior to July 13, 2016 the building Management and BAS IT network system that monitored and controlled the operation of the air handling units that were designed by Brinjac was programmed so that under certain default conditions sensed by the building Management and BAS IT network system, the air handling units would move into an operating sequence identified as the "economizer mode".
>
> 11. In particular, the specifications and design of the air handling units and the associated sequencing of operations controlled by the building Management and BAS IT network system caused the air handling units to move into economizer mode if the air handling unit sensed the lack of chilled water that was necessary for the proper operation of the air handling units and associated HVAC system at the Hospital.

Compl. ¶¶ 10-11.

Federal Rule of Civil Procedure 8(a)(2) provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." The pleading must provide not only "fair notice" of the claim but also the "grounds" on which the claim rests. *Phillips*, 515 F.3d 224, 232 (3d Cir. 2008) (citing *Twombly*, 550 U.S. at 555). Federal Insurance's Complaint fails to meet this standard with respect to the claims against Brinjac.

Although paragraphs 10 and 11 of the Complaint, as quoted above, allege that the air handling units were "designed by Brinjac," they do not clearly allege that there was anything

faulty about Brinjac's work, nor do they allege that the systems should have operated otherwise than they did. In other words, the Court is unable to discern in these paragraphs, or anywhere in the Complaint, any allegation that Brinjac breached any standard of care, as a result of which breach the events of July 13, 2016, occurred. Paragraph 60 of the Complaint contains several additional allegations concerning Brinjac, but they are similarly unclear and, in any event, Federal Insurance has not even mentioned these in its response in opposition to Brinjac's Motion.[2]

Federal Insurance has requested that the Court grant it leave to amend its Complaint in the event the Court finds it subject to dismissal. Generally, leave to amend a complaint will be freely given. Fed. R. Civ. P. 15(a). Moreover, "whether or not a plaintiff seeks leave to amend . . . if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 236. As there is no reason to believe that leave to amend would be inequitable or futile in these circumstances, leave is granted.

**C.     The Court will not stay this matter.**

Dynatech—the other defendant in this case—has filed a response concerning Brinjac's Motion to Dismiss, asserting that Brinjac's Motion should be granted in part and denied in part. ECF No. 13. In particular, Dynatech contends that Federal Insurance "should be ordered to file an Amended Complaint, to specifically allege its damages, policy limits, and deductible." Dynatech Br. 2, ECF No. 13-1. In addition, Dynatech asserts that this matter should be stayed for ninety days to allow experts sufficient time to examine the Ethernet switch referred to in

---

[2] For example, paragraph 60(b) alleges that Brinjac "[f]ailed to properly carry out its construction site visits and observation obligations to the Hospital during the construction and installation of the air handling units and related control components." But it is unclear what, if anything, this alleged failure has to do with the events of July 13, 2016.

paragraphs 13 and 14 of the Complaint. Dynatech has not cited any legal authority for its first request, nor does the Court discern any basis for it. Likewise, with respect to the second request, there does not appear to be any basis for staying this matter. In any event, Federal Insurance asserts that it "will not object to promptly scheduling a nondestructive examination of the Ethernet switch once the pleadings in this matter are closed." Pl.'s Reply Dynatech's Resp. 2, ECF No. 15.

IV. **Conclusion**

For the reasons set forth above, Brinjac's Motion to Dismiss Federal Insurance's claims against it is denied in part and granted in part, as the Court concludes the made whole doctrine does not preclude Federal Insurance from establishing standing in this matter, but that its Complaint fails to state a claim against Brinjac. Leave to amend will be granted. A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge